## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| **CARRIE M.,** | |
| **Plaintiff,** | **Case No. 1:25-cv-00183** |
| vs. | |
| **FRANK BISIGNANO,** **Commissioner of Social Security,** | **MEMORANDUM DECISION AFFIRMING DECISION OF COMMISSIONER** |
| **Defendant.** | **Magistrate Judge Dustin B. Pead** |

## INTRODUCTION

The parties in this case have consented to the undersigned conducting all proceedings.[1] Pursuant to 42 U.S.C. § 405(g), Plaintiff Carrie M.[2] ("Plaintiff") seeks judicial review of the decision of the Commissioner of Social Security ("Commissioner") denying her claims for disability insurance benefits under Title II of the Social Security Act ("Act").[3] The Administrative Law Judge ("ALJ") who considered Plaintiff's application determined she did not qualify as disabled.[4] Plaintiff argues the ALJ erred in his analysis of ability to sustain full-time work and suggests remand is appropriate.[5]

---

[1] ECF No. 5, Notice of Consent; 28 U.S.C. § 636(c).

[2] Based on privacy concerns regarding sensitive personal information, the court has determined to caption Social Security decisions using only the Plaintiff's last name. Privacy concerns are inherent in many of the Federal Rules. *See generally* Fed. R. App. P. 25(a)(5); Fed. R. Civ. P. 5.2; Fed. R. Crim. 49.1.

[3] ECF No. 8, Plaintiff's Motion for Review of Social Security Agency Action.

[4] ECF No. 7-10 at 76-91, Social Security Administration Decision.

[5] ECF No. 8.

1

After careful review of the record and parties' briefs,[6] the undersigned concludes the Commissioner's decision is supported by substantial evidence. Accordingly, for the reasons discussed below, the court hereby AFFIRMS the decision of the Commissioner and DENIES Plaintiff's Motion for Review of Social Security Agency Action.[7]

## STANDARD OF REVIEW

Sections 405(g) of Title 42 of the United States Code provides for judicial review of the Commissioner's final decision.[8] Judicial  review "is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence."[9] "Failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is ground for reversal."[10]

An ALJ's factual findings are "conclusive. . . so long as they are supported by substantial evidence."[11] The threshold for evidentiary sufficiency under the substantial evidence standard is "not high."[12] Substantial evidence is "more than a mere scintilla and is such relevant evidence as

---

[6] *Id.*; ECF No. 15, Commissioner's Brief; ECF No. 16, Plaintiff's Reply Brief.

[7] ECF No. 8.

[8] 42 U.S.C. § 405(g).

[9] *Noreja v. Social Security Commissioner,* 952 F.3d 1172, 1177 (10th Cir. 2020) (quotation and citation omitted).

[10] *Jensen v. Barnhart,* 436 F.3d 1163, 1165 (10th Cir. 2005).

[11] *Biestek v. Berryhill,* 587 U.S. 97, 139 S. Ct. 1148, 203 L. Ed. 2d 504 (2019) (internal quotation omitted).

[12] *Id*. at 1154.

a reasonable mind might accept as adequate to support a conclusion."[13] "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence."[14] Under this standard, the Court may neither reweigh the evidence nor substitute its judgment for that of the ALJ.[15]

### APPLICABLE LAW

Under the Act, "disability" is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which is expected to result in death or last for at least twelve consecutive months.[16] Any individual is considered disabled if her impairments are so severe that she cannot perform past work or "any other kind of substantial gainful work which exists in the national economy".[17]

In determining whether a claimant qualifies as disabled, the ALJ utilizes a five-step sequential evaluation to consider whether:

1) the claimant is engaged in substantial gainful activity;

2) she has a severe medically determinable physical or mental impairment;

3) the impairment is equivalent to an impairment precluding substantial gainful activity as listed in the appendix of the relevant disability regulation;

4) she has the residual functional capacity to perform past relevant work; and

---

[13] *Noreja,* 952 F.3d at 1178 (quoting *Grogan v. Barnhart,* 399 F.3d 1257, 1261 (10th Cir. 2005)); *see also Biestek* 139 S. Ct. at 1154.

[14] *Lax v. Astrue,* 489 F. 3d 1080, 1084 (10th Cir. 2007) (internal quotation marks omitted).

[15] *See Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014).

[16] 42 U.S.C. § 1382c (a)(3)(A).

[17] 42 U.S.C. § 1382c (a)(3)(B).

5) she has the residual functional capacity to perform other work, considering her age, education and work experience.[18]

In the first four steps of the sequential evaluation it is claimant's burden to establish disability.[19] At step five, the burden shifts to the Commissioner to show that claimant retains the ability to perform other work in the national economy.[20]

## PROCEDURAL HISTORY

Plaintiff applied for disability benefits under Title II of the Social Security Act on April 26, 2019, alleging disability beginning June 27, 2014.[21] The date Plaintiff was last insured for disability insurance benefits was December 31, 2021, which meant she had to prove she was disabled prior to that date.[22]

Plaintiff's claim was initially denied on January 24, 2020, and on reconsideration on May 28, 2020.[23] Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") which was held before ALJ Preston Mitchell on June 27, 2021.[24] At the hearing, Plaintiff amended her disability onset date to June 27, 2016.[25] A day later, on June 28, 2021, ALJ

---

[18] *See* 20 C.F.R. § 416.920(a)(4); *Bowen v. Yuckert,* 482 U.S. 137, 140-42, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987); *Williams v. Bowen,* 844 F. 2d 748, 750-51 (10th Cir. 1988).

[19] *Ray v. Bowen,* 865 F.2d 222, 224 (10th Cir. 1989).

[20] *Id.*

[21] Certified Administrative Record, ("Tr.") at 158-159.

[22] Tr. 1319.

[23] Tr. 69-70.

[24] Tr. 31-68.

[25] Tr. 19.

Mitchell issued a Decision on June 28, 2021, finding Plaintiff not disabled.[26] Plaintiff appealed ALJ Mitchell's Decision to the United States Federal District Court, and the court remanded Plaintiff's claim to the Commissioner on September 26, 2022.[27]

A remand hearing was held on July 11, 2023, at which the ALJ again found Plaintiff not disabled. The Appeals Council remanded the case to a new ALJ on April 3, 2024 with the specific instruction to "[g]ive further consideration to Plaintiff's maximum residual functional capacity" along with "specific references to evidence of record in support of the assessed limitations."[28]

A hearing was held before ALJ Gerald R. Bruce on November 14, 2024 at which Plaintiff was represented by legal counsel.[29] Several months later, on February 7, 2025, ALJ Bruce issued a Decision finding Plaintiff not disabled and denying an award of benefits.[30] The Appeals Council declined to review ALJ Bruce's decision and that decision now stands as the final decision of the Commissioner.[31]

On November 14, 2025, Plaintiff brought her current action appealing the Commissioner's February 7, 2025 Decision pursuant to 42 U.S.C. § 405(g).[32]

---

[26] ECF No. 7-2 at 18-27, Social Security Administration Decision.

[27] *See Carrie M. v. Kijakazi*, 1:22-cv-00058 (D. Utah); ECF No. 19, Report and Recommendation; ECF No. 20, Order Adopting Report and Recommendation.

[28] ECF No. 7-10 at 76, Social Security Administration Decision.

[29] ECF No. 7-9 at 8-45, Transcript of November 14, 2025 Social Security Administration Hearing; Tr. 1172-1209.

[30] ECF No. 7-10 at 76-91.

[31] 20 C.F.R. § 404.984. Reference to the Code of Federal Regulations (C.F.R.) are to the 2025 edition of 20 C.F.R. Part 404, which governed Title II claims when the ALJ rendered his decision in this case.

### 1.  The Commissioner's Final Decision

In reaching his February 7, 2025 Decision, ALJ Bruce followed the Commissioner's five-step sequential evaluation process for disability claims.[33] At Step 2, the ALJ found that Plaintiff had the "severe" impairments of multiple sclerosis and depression.[34]

At Step 3, the ALJ found that Plaintiff's impairments did not meet or medically equal one of the listed impairments.[35] Between Step 3 and Step 4, the ALJ assessed Plaintiff's Residual Functional Capacity ("RFC") and limited Plaintiff to "light work."[36] The ALJ further determined that Plaintiff :

> could stand and/or walk with normal breaks for 4 hours in an 8-hour workday; she could sit with normal breaks for 6 hours in an 8-hour workday; she could occasionally climb ramps and stairs; she could never climb ladders, ropes and scaffolds; she could frequently balance; she could occasionally stoop, kneel, crouch, and crawl; she could frequently reach, handle, finger, and feel bilaterally; she could never be exposed to hazards such as unrestricted heights and dangerous moving machinery; she could be exposed to moderate noise as defined in the SCO; due to a combination of physical conditions, mental limits, and the effect of medication, she was limited to simple work; and due to the effects of infusion therapy, she would be absent an average of 1 day of work every 1 month.[37]

---

[32]  ECF No. 1, Complaint.

[33] ECF No. 7-10 at 76-91; *see also* 20 C.F.R. § 404.1520(a) (4) (outlining the process).

[34] *Id.* at 79; *see* 20 C.F.R. § 404.1520(c).

[35] *Id.* at 80-81; 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"); 20 C.F.R. § 404.1520(d); 20 C.F.R. § 404.1525; 20 C.F.R. § 404.1526.

[36] *Id.* at 81-82; *see* 20 C.F.R. § 404.1567(b) (defining "light work" as a job which "involves sitting most of the time with some pushing and pulling of arm or leg controls").

[37] *Id.*

Next, at Step 4, the ALJ stated that Plaintiff had no relevant past work.[38] Finally, at Step 5, the ALJ determined that, through the date last insured, and considering Plaintiff's age, education, work experience and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed, including that of routing clerk, price marker and final inspector.[39]

At the hearing, the ALJ inquired with the vocational expert about the impact that two days off of work every month (on average) would have on an individual with similar limitations as Plaintiff.[40] The vocational expert indicated that an individual with an average of one absence of work per month could work, but an individual with two absences from work per month, "due to the effects of infusion therapy", could not maintain employment.[41]

---

[38] *Id.* at 89; *see also* 20 C.F.R. §404.1565.

[39] *Id.*; *see also* 20 C.F.R. §§ 404.1569, 404.1569(a). DOT 222.687-022 (routing clerk with approximately 40,000 jobs in the national economy); DOT 209.587-034 (price marker with approximately 30,000 jobs in the national economy); and DOT 727.687-054 (final inspector with approximately 35,000 jobs in the national economy).

[40] *Id.* at 43 (testimony of vocational expert Connie Hill).

> Q: In hypothetical number four, let me add to hypothetical number one the following additional limitations which is due to the effects of infusion therapy, who will be absent an average of one day of work every one month. Would those jobs still be available?
>
> A: Yes.
>
> Q: Finally, in hypothetical number five, let me add the following additional limitation to hypothetical number one which is due to the effects of infusion therapy, she will be absent an average of two days of work every one month. Would such an individual be able to perform any work?
>
> A: No.

[41] *Id.* at 43-44.

Based thereon, the ALJ determined that a finding of "not disabled" under the Act was appropriate and concluded Plaintiff has not been under a disability from June 27, 2016, the amended alleged onset date, through December 31, 2021, the date last insured.[42]

## ANALYSIS

Plaintiff asserts the ALJ erred in concluding that she can sustain full-time work, despite the requirements of her treatment for multiple sclerosis. Although the RFC accounts for one day off work per month for infusions, Plaintiff argues the RFC fails to account for additional days she needs to take off work to address: (1) the side effects of her infusion treatment; (2) periods of time in which she stopped taking her medication; and (3) additional appointments. The Commissioner, however, contends Plaintiff has not established harmful error and ALJ Bruce's February 7, 2025 Decision should be affirmed.

### The ALJ Reasonably Found That Plaintiff Retained The RFC To Perform A Light Range Of Work And Would Be Absent Only One Day Per Month.

Despite this case's somewhat complicated procedural history, the immediate issue before the court is relatively straight-forward. Here, the ALJ found Plaintiff would be "absent an average of 1 day of work every 1 month."[43] Plaintiff argues she will miss more time and is therefore unable to work. At its essence, the ALJ's conclusion in this case is based on an evaluation of Plaintiff's complaints and a determination that those complaints were not consistent with the evidence in the record as a whole. As the fact-finder, the ALJ's conclusions are subject to deference and while this court may have determined otherwise, the court concludes that the record reasonably supports the ALJ's decision.[44]

---

[42] *Id.* at 91; *see also* 20 C.F.R. § 404.1520(g).

[43] ECF No. 7-10 at 82.

[44] *Biestek,* 587 U.S. at 108 (under substantial evidence review, the court "defers to the presiding

On appeal, Plaintiff raises three main reasons as to why the ALJ incorrectly concluded she would only miss one day of work per month. First, Plaintiff asserts that the day after she receives infusions she experiences side effects (headaches and fatigue) and needs additional time to rest.[45] In his decision, the ALJ acknowledged that Plaintiff complained of headaches about fifty (50) % of the time, but also noted that Plaintiff's allegation was inconsistent with the record which contained no evidence that Plaintiff sought treatment for her headaches.[46] In turn, the ALJ cited to specific treatment records indicating Plaintiff did not have any complaints when she left the infusion clinic and that she "usually feels better the next day after infusion."[47] Thus, while Plaintiff may disagree with the ALJ's determination, there is substantial evidence in the record to support the ALJ's conclusion.

Second, Plaintiff contends the ALJ failed to take into consideration the time periods when she stopped receiving infusions and the "symptomology that occur[ed]" including severe relapses.[48] The ALJ's Decision acknowledges the period of time from April 2018 to June 2020 when Plaintiff did not consistently receive infusion therapy, but clarifies that the specific period

---

ALJ, who has seen the hearing up close."); *see also Lax v. Astrue,* 489 F.3d 1080, 1084 (10th Cir. 2007) (quotations and citation omitted) (on review, the court "may not displace the agency's choice between two fairly conflicting views, even though the court [may have] justifiably [ ] made a different choice had the matter been before it de novo.").

[45] ECF No. 8 at 14-15. Plaintiff asserts she has had a least one or two more infusions than found by the ALJ. *See id.*

[46] ECF No. 7-10 at 83 (Plaintiff "said she had a headache following her infusions approximately 50% of the time."); *id.* at 87.

[47] *Id.* at 86 (citing 20F/75-103 and 18F) ("there is significant evidence indicating that the claimant had no complaints after infusions."); *see also* ECF No. 7-9 at 37 (stating Plaintiff's side effects after her infusions are "completely inconsistent").

[48] ECF No. 8 at 16.

of review extends from the amended onset date of June 27, 2016 to the date last insured on December 31, 2021.[49] The ALJ further acknowledged Plaintiff's testimony indicating she had relapses or periods during which she experienced weakness, numbness, foot drop and vision loss.[50] Nonetheless, Plaintiff reported that the symptoms did not interfere with her daily activities and, as the ALJ points out, during the time periods where Plaintiff was not receiving treatments "every 4 weeks," she was not experiencing any adverse reactions or side effects from the infusions.[51] Additionally, Plaintiff does not establish that during the time she was not receiving infusions her symptoms were so severe, for a continuous twelve month period, that she was disabled.[52]

Finally, Plaintiff argues the ALJ failed to take account of the fact that she has to undergo other treatments necessary for maintenance of her illness and that those treatments require her to take additional days off work. Based on the medical evidence and Plaintiff's testimony at the hearing, the ALJ noted that Plaintiff would need to receive MRI's "every six months or so."[53] Other than that, however, Plaintiff fails to provide any evidence supporting her claim that additional treatments would regularly require her to miss work, and the burden is on Plaintiff to

---

[49] ECF No. 7-10 at 86.

[50] *Id.* at 85.

[51] *Id.; id.* at 89.

[52] *See* 20 C.F.R. § 404.1509 ("Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months."); *Branum v. Barnhart,* 385 F.3d 1268, 1271 (10th Cir. 2004) ("The burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability.").

[53] ECF No. 7-10 at 83; ECF No. 7-9 at 38.

do so.[54] For example, there is no evidence supporting a claim that Plaintiff would be required to get her six month MRI on a day separate from her infusion date or that she could not get her MRI on a day or time that she did not have work scheduled.

## CONCLUSION

For the reasons discussed, there is substantial evidence in the record to support the ALJ's decision and the Court AFFIRMS the Commissioner's decision. Plaintiff's Motion for Review of Social Security Agency Action is DENIED.[55]

Dated this 27th day of May, 2026.

_____

Dustin B. Pead, U.S. Magistrate Judge

---

[54] *Ann M. v. Bisignano,* 2026 U.S. Dist. LEXIS 23165, *4 (D. Kan. Feb. 4, 2026) (burden is on Plaintiff at steps one through four of the sequential evaluation process).

[55] ECF No. 8.